JOHN F. BIGLEY, EXECUTOR (ESTATE OF NORMA C. WHITE) *v.* PACIFIC STANDARD LIFE INSURANCE COMPANY
(14671)

BORDEN, BERDON, NORCOTT, KATZ and PALMER, Js.

Argued December 3, 1993—decision released May 31, 1994

*Peter C. Harvey,* for the appellant-appellee (plaintiff).

*Alice Ann Carey,* for the appellee-appellant (defendant).

PALMER, J. This case requires us to decide whether the beneficiary of a life insurance annuity policy or the insurance company that issued the policy bears the loss resulting from the insurer's payment of the policy proceeds to a person fraudulently substituted as the beneficiary. The trial court held that the defendant, Pacific Standard Life Insurance Company, was not liable to the plaintiff, John F. Bigley,[1] executor of the estate of Norma C. White and the beneficiary of a life insurance annuity policy purchased by White from the defendant, because the defendant had paid the policy proceeds in good faith to a fraudulently substituted beneficiary. We reverse the judgment of the trial court.[2]

The relevant facts are undisputed. In May, 1987, White purchased a life insurance annuity policy from the defendant and named the plaintiff as beneficiary in his capacity as trustee of her estate. Michael Jurinske, an insurance agent and White's grandson, had sold the policy to White and had witnessed White's execution

[1] Barry C. Knott has been substituted as the executor of White's estate and as the plaintiff in this case.

[2] The plaintiff appealed from the judgment of the trial court and the defendant cross appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

of the policy application. On January 15, 1988, White died in an automobile accident. At the time of her death, the value of the policy was $225,343.18.

On January 21, 1988, the defendant received a written request to change the beneficiary of White's policy. The change of beneficiary form, dated January 8, 1988, bore the purported signature of White and sought a change in the beneficiary of the policy from the plaintiff to Jurinske, as trustee for two of White's great-grandchildren. The form also bore Jurinske's signature as a witness to White's purported execution of the form. The defendant approved the request, and on January 25, 1988, mailed a notification letter to White's home acknowledging the change of beneficiary. On March 22, 1988, the defendant, having received a copy of White's death certificate from Jurinske and no other claim to the proceeds of the policy, forwarded a check to Jurinske in the amount of the policy.[3]

The plaintiff brought this action, alleging that the defendant had negligently approved the forged change of beneficiary form, and that the defendant had breached the terms of the policy by failing to pay the proceeds to the plaintiff. The defendant denied the allegations and asserted four special defenses, namely that: (1) the action should be stayed in light of an order of the Superior Court for the state of California enjoining all actions against the defendant;[4] (2) the defendant had been discharged from liability by virtue of its payment of the policy proceeds in accordance with the

---

[3] We were informed at oral argument that Jurinske had absconded with and squandered the policy proceeds.

[4] On December 11, 1989, the Superior Court for the state of California, which had appointed the California insurance commissioner to act as conservator for the then insolvent defendant, issued an order enjoining all persons from instituting or maintaining any action against the defendant or the conservator without both prior notice to the insurance commissioner and authorization from that court.

terms of the change of beneficiary form; (3) General Statutes § 38a-453 (c)[5] bars the claims of the plaintiff; and (4) the plaintiff's claims are barred by his failure to question or challenge the fraudulent change of beneficiary request in a timely manner.

A trial to the court ensued. The court found that Jurinske had fraudulently induced the defendant to pay the policy proceeds to him, rather than to the plaintiff, by forging White's signature on the change of beneficiary form. The court concluded that the defendant's good faith payment of the policy proceeds to Jurinske without knowledge of the fraud or notice of any competing claim relieved the defendant of its obligation to the plaintiff under the policy.[6] We disagree.

An insurer who is contractually obligated to remit the proceeds of a life insurance policy upon the death of the insured is discharged from liability under the policy if, in good faith, it pays the proceeds to the beneficiary designated by the policyholder. *Weed* v. *Equitable Life Assurance Society of the United States,* 288

[5] General Statutes § 38a-453 provides in relevant part: "RIGHTS OF CREDITORS OF INSURED AGAINST BENEFICIARY. (a) The beneficiary of any life insurance policy, being a person other than the insured, whether named as beneficiary in the original policy or subsequently named as beneficiary in accordance with the terms of the policy, shall be entitled to the proceeds of the policy as against the representatives or creditors of the insured, unless the policy was procured or the designation of a beneficiary was made with intent, express or implied, to defraud creditors. . . .

"(c) The company issuing the policy shall be discharged of all liability thereunder by payment of the proceeds in accordance with the terms of the policy, unless, before such payment, the company has received written notice, from a creditor, executor or administrator of the insured, that the policy was procured or premiums were paid thereon with intent to defraud creditors. That notice may be disregarded by the company unless proper legal proceedings to enforce the claim are begun within three months from the giving of the notice."

[6] At the close of the plaintiff's case, the trial court granted the defendant's motion to dismiss the first count of the complaint, which alleged negligence by the defendant, for failure to make out a prima facie case. See Practice Book § 302. The plaintiff has not appealed from this ruling.

F.2d 463 (5th Cir.), cert. denied, 368 U.S. 821, 82 S. Ct. 40, 7 L. Ed. 2d 27 (1961); *Harper* v. *Prudential Ins. Co. of America,* 233 Kan. 358, 662 P.2d 1264 (1983); *Avondale* v. *Sovereign Camp, Woodmen of the World,* 134 Neb. 717, 279 N.W. 355 (1938); 4 G. Couch, Insurance (2d Ed. Rev. 1984) § 27:176; see *Iverson* v. *Scholl, Inc.,* 136 Ill. App. 3d 962, 483 N.E.2d 893 (1985); *Bickers* v. *Shenandoah Valley National Bank,* 197 Va. 145, 88 S.E.2d 889 (1955), reh. denied, 197 Va. 732, 90 S.E.2d 865 (1956). This general rule relieves the insurer from liability under the policy in circumstances where, for example, the insurer had paid the beneficiary designated by the policyholder without knowledge that: (1) the policyholder was incompetent or insane at the time the beneficiary was designated; *Weed* v. *Equitable Life Assurance Society of the United States,* supra, 463; *New York Life Ins. Co.* v. *Federal National Bank,* 151 F.2d 537 (10th Cir. 1945); *State Life Ins. Co.* v. *Coffrini,* 285 F. 560 (3d Cir. 1922); *Metropolitan Life Ins. Co.* v. *Bramlett,* 224 Ala. 473, 140 So. 752 (1932); (2) the beneficiary was criminally responsible for the death of the policyholder; *In re Estate of Thompson,* 99 Ill. App. 3d 303, 426 N.E.2d 1 (1981); *Harper* v. *Prudential Ins. Co. of America,* supra, 358; or (3) the beneficiary had exerted undue influence over the policyholder in order to secure the designation as beneficiary. *Bosworth* v. *Wolfe,* 146 Wash. 615, 264 P. 413 (1928). Unless the insurer has reason to believe that the beneficiary named by the policyholder is not entitled to receive the policy proceeds, payment to the policyholder's designated beneficiary discharges the insurer from liability under the policy.

Payment of the policy proceeds to a person fraudulently substituted as beneficiary, however, does not relieve the insurer of its contractual obligation to pay the beneficiary actually designated by the policyholder. *Western & Southern Life Ins. Co.* v. *Whiston,* 30 Ill.

App. 3d 844, 333 N.E.2d 72 (1975); *Stavros* v. *Western & Southern Life Ins. Co.*, 486 S.W.2d 712 (Ky. App. 1972); *Union Labor Life Ins. Co.* v. *Parmely*, 270 Md. 146, 311 A.2d 24 (1973); G. Couch, supra, § 27:177; cf. *McNabb* v. *Kentucky Central Life Ins. Co.*, 631 S.W.2d 253 (Tex. App. 1982). The life insurance annuity policy purchased by White expressly required the defendant to pay the policy proceeds to the beneficiary designated by White. Payment of the proceeds to Jurinske did not discharge the defendant from its contractual obligation to pay the plaintiff because Jurinske was not the beneficiary named by the policyholder.

This conclusion is consistent with the general rule that a change of beneficiary of an insurance policy can be effected only by following the procedure prescribed by the policy. *Aetna Life Ins. Co.* v. *Hartford National Bank & Trust Co.*, 146 Conn. 537, 541, 153 A.2d 448 (1959); *O'Connell* v. *Brady*, 136 Conn. 475, 480, 72 A.2d 493 (1950). The life insurance policy purchased by White sets forth only one method by which a change of beneficiary may be effected: *"[T]he owner* [of the policy] may change the Beneficiary *during the lifetime of the Insured* by filing a satisfactory written request with us at our Executive office. . . ."* (Emphasis added.) Because Jurinske, rather than the owner of the policy, signed the change of beneficiary form and submitted it to the defendant after the death of the insured, the request did not comply with the terms of the contract and, therefore, did not effect a change of beneficiary.[7]

---

[7] The trial court held that an insurance company is discharged from liability under a life insurance policy even if, as here, it makes a good faith payment of the proceeds to a purported beneficiary not named by the policyholder. The trial court further concluded that the legislature adopted that general rule with the enactment of General Statutes § 38a-453 (c). The court misconstrued both the rule and § 38a-453 (c). As we have discussed, an insurer will be discharged from liability only when it pays the proceeds in good faith to the beneficiary *actually designated by the policyholder*. Moreover, § 38a-453 (c) applies where the "policy was procured or premiums

The trial court did not reach the defendant's special defense that the plaintiff's claims are barred by his failure to question or challenge the fraudulent change of beneficiary request in a timely manner.[8] The defendant will have the opportunity to prove that claim on retrial.[9]

The judgment of the trial court is reversed, and the case is remanded for a new trial.

In this opinion the other justices concurred.

were paid thereon with intent to defraud creditors'' of the insured, circumstances not alleged in this case. Section 38a-453 (c) is therefore inapposite.

[8] The defendant contends that the plaintiff is estopped from recovering against the defendant because he had failed to notify the defendant of his claim to the policy proceeds in a timely manner, and because he had failed to apprise the defendant of certain facts that would have alerted the defendant to the fraudulent nature of the change of beneficiary form submitted by Jurinske.

[9] In its cross appeal, the defendant claims that the trial court improperly denied its request for a stay on comity grounds in view of the California state court order enjoining all actions against the defendant. We dismiss the cross appeal because the defendant is not aggrieved by the judgment of the trial court. See Practice Book § 4005; *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 547 n.1, 552 A.2d 796 (1989); *Orticelli* v. *Powers,* 197 Conn. 9, 11 n.1, 495 A.2d 1023 (1985). Although we may entertain such a claim where, as here, it has been raised in the party's preliminary statement of issues; Practice Book § 4013 (a) (1) (B); see, e.g., *Air-Kaman, Inc.* v. *Groppo,* 221 Conn. 751, 754 n.5, 607 A.2d 410 (1992); we decline to consider it at this time. On remand, the trial court will have the opportunity to consider the defendant's comity claim, should it arise, in light of existing factual circumstances.